```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND


AVITECH, L.L.C.                    :
                                   :
v.                                 :   Civil No. WMN-04-3082
                                   :
EMBREX, INC.                       :
                                   :
```

**MEMORANDUM**

Before the Court are Defendant's motion to dismiss Plaintiff's declaratory judgment action (Paper No. 25); Defendant's motion to dismiss or, in the alternative, to stay Plaintiff's antitrust claim (Paper No. 26); and Defendant's motion to dismiss Plaintiff's counterclaims (Paper No. 33). All motions are ripe for decision. Upon a review of the pleadings and applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that all Defendant's motions will be granted, except for the motion to dismiss the declaratory judgement action.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On August 3, 2004, Defendant Embrex filed a patent infringement lawsuit against Plaintiff Avitech in the Middle District of North Carolina claiming that Avitech infringes Embrex's U.S. Patent No. 5,136,979 ("the '979 Patent"). The '979 Patent is entitled <u>Modular Injection System for Avian Embryos</u> and relates to an apparatus used for injecting a vaccine into poultry eggs. Embrex claims that in July 2004 Avitech began marketing the accused injection device for avian eggs under the name

"Intelliject."

Avitech did not answer Embrex's Complaint and on September 27, 2004, filed suit against Embrex in this Court seeking a declaratory judgment that it does not infringe the '979 Patent (Count I) and asserting an antitrust claim (Count II). On the following day, in the North Carolina court, Avitech filed a motion to dismiss, or in the alternative, to transfer Embrex's suit to this Court. The North Carolina court concluded that "at the time [the] action was commenced, the court did not have a basis for exercising personal jurisdiction over Avitech" and transferred Embrex's suit to this Court. Paper Nos. 10-3, 15-2. This Court consolidated the two actions on October 24, 2005. On November 15, 2005, Avitech answered Embrex's infringement suit and added counterclaims against Embrex asserting the identical declaratory judgment and antitrust claims it alleged in the suit initially filed in this Court. Paper No. 24.

## II.  LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In considering such a motion, the court is required to accept as true all well-pled allegations in the Complaint, and to construe the facts and

reasonable inferences from those facts in the light most favorable to the plaintiff.  See Ibarra v. United States, 120 F.3d 472, 473 (4th Cir. 1997).  "To survive a motion to dismiss, Plaintiff[s] must have alleged facts that show that they are entitled to relief on their substantive causes of action."  In re Criimi Mae, Inc. Securities Litigation, 94 F. Supp. 2d 652, 656 (D. Md. 2000).

### III.  DISCUSSION

A.  Antitrust Claims

Embrex argues that Avitech's antitrust action should be dismissed, Paper No. 26, and that Avitech's counterclaim alleging an antitrust violation should also be dismissed.  Paper No. 33.  Avitech asserts that Embrex has a monopoly in the market for the provision of in ovo injection machines; that Embrex's monopolizing conduct was done without a good faith belief in the validity, infringement or enforceability of the '979 patent; and that its patent infringement lawsuit against Avitech was a "sham."  Compl. ¶¶ 20-24.  Avitech further alleges that Embrex has maintained a monopoly in and attempted to control this market by "asserting the '979 patent against Avitech and threatening its potential customers with patent infringement or actions for patent infringement if they use Avitech's machine."  Id. ¶ 23.  Embrex counters that Avitech "fail[ed] to allege any facts to support the conclusion that Embrex lacked a reasonable basis to

3

protect its patent rights by claiming that Avitech infringes the '979 patent." Mem. 3.

Under the Noerr-Pennington doctrine[1] private parties are immune from antitrust liability for exercising their First Amendment rights in legitimate attempts to obtain judicial relief. See California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 511 (1972). Such petitioning does not extend to "illegal and reprehensible practices which may corrupt the . . . judicial process." Id. at 513. While genuine petitioning is immune from antitrust liability, sham petitioning is not. BE&K Constr. Co. v. NLRB, 536 U.S. 516, 525-26 (2002). Thus, a patentee that files a law suit to enforce its patent rights against an alleged infringer is immune from liability on antitrust claims unless it can be shown that the infringement suit is a sham. See California Motor Transport Co., 404 U.S. at 511.

Courts apply a two-part test in order to determine whether litigation is a "sham." Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., 508 U.S. 49, 60 (1993). "First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on

---

[1] Named after the cases in which it was established: Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961); United Mine Workers v. Pennington, 381 U.S. 657 (1965).

4

the merits." Id.  If a lawsuit was not objectively baseless, the suit is immunized under Noerr-Pennington, and an antitrust claim premised on the sham exception must fail.  Id.  Only if the litigation is meritless can the court examine the litigant's subjective motivation.  Id.  Under the second prong of the "sham" test, the court must determine if "the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor through the use of the governmental process - as opposed to the outcome of that process - as an anticompetitive weapon."  Id. at 61 (internal quotations and citations omitted).

Embrex argues that Avitech has failed to plead its claim of sham litigation with particularity.[2]  Mem. 7.  Avitech argues that "there are no heightened or special pleading rules for antitrust claims" and cites Swierkiewicz v. Sorema N.A. for the proposition that "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."  534 U.S. 506, 513 (2002); Mem. 7.  Wright and Miller have observed that while in the 1950s, "[a] number of federal courts concluded that more detailed pleadings were necessary" for antitrust actions, "it should now be settled that there is no heightened pleading

---

[2] Embrex asserts that "Avitech states no facts indicating that Embrex's suit was objectively baseless, and no facts to suggest that Embrex's intent in filing the lawsuit was to use the adjudicative process, as opposed to the outcome of that process - i.e., a finding of infringement - to prevent Avitech from entering the market."  Mem. 7.

5

standard in antitrust cases." WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 1228.

The Fourth Circuit, however, clearly requires a heightened pleading standard in antitrust cases. See Dickson v. Microsoft Corp., 309 F.3d 193 (4th Cir. 2002). The Dickson court stated:

> We recognize that summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, and that an antitrust complaint should not be dismissed at the 12(b)(6) stage merely because the court doubts the plaintiff will ultimately prevail. Nevertheless, to avoid dismissal for failure to state a claim, the plaintiff must colorably state facts which, if proven, would entitle him to relief.

309 F.3d at 212. The dissent in Dickson recognized that the Fourth Circuit's pleading standard appears to conflict with the Supreme Court's pronouncement on federal pleading requirements in Swierkiewicz. Id. at 218 (Gregory, J., dissenting).

In its opposition, Avitech cites to Fare Deals Ltd. v. Glorioso, 217 F. Supp. 2d 670 (D. Md. 2002), in support of its argument that Embrex is "plainly wrong" in suggesting that Avitech should have pled particular facts. Opp'n 9. In Fare Deals, Judge Davis refused to dismiss an antitrust claim at the 12(b)(6) stage even though he concluded that the defendants "made cogent and compelling arguments, well-supported by citations to highly relevant if not controlling case law (to which plaintiff [] offered scant contrary analysis), suggesting that plaintiff and plaintiff's attorneys have embarked on a spurious fishing

6

expedition for facts in support of bloated and misguided claims." 217 F. Supp. 2d at 671. In Southern Volkswagon, Inc. v. Centrix Financial, LLC, however, this Court rejected a similar argument based on Fare Deals after recognizing that Fare Deals was decided before the Fourth Circuit's decision in Dickson. 357 F. Supp. 2d 837, 846 (D. Md. 2005). Southern Volkswagon involved an antitrust claim in which the plaintiffs "argue[d] vigorously that at the current stage of litigation, i.e., a Rule 12(b)(6) motion, the Court should permit [the] claim to proceed into the discovery stage even if the Court has great doubts about the eventual success of the [p]laintiffs." Id. This Court rejected this argument stating that Dickson "gave definitive guidance concerning the resolution of antitrust claims at the 12(b)(6) stage." Id.

Under the legal standard that this Court must apply, allegations of bare legal conclusions are not sufficient to withstand 12(b)(6) motions in antitrust cases.[3] Avitech's antitrust complaint does not meet the heightened pleading

---

[3] The Court notes that the Ninth Circuit also applies a heightened pleading standard to claims involving the "right to petition governmental bodies under Noerr-Pennington." Oregon Natural Res. Council v. Mohla, 944 F.2d 531, 533 (9th Cir. 1991). Complaints that fail to allege specific activities that bring defendant's conduct into one of the Noerr-Pennington exceptions do not survive 12(b)(6) motions. See Meridian Project Sys. v. Hardin Constr. Co., 404 F. Supp. 2d 1214 (D. Cal. 2005) (applying a heightened pleading standard to a claim that the patent holders infringement suit constituted sham litigation in a post-Swierkiewicz decision.

expedition for facts in support of bloated and misguided claims." 217 F. Supp. 2d at 671. In Southern Volkswagon, Inc. v. Centrix Financial, LLC, however, this Court rejected a similar argument based on Fare Deals after recognizing that Fare Deals was decided before the Fourth Circuit's decision in Dickson. 357 F. Supp. 2d 837, 846 (D. Md. 2005). Southern Volkswagon involved an antitrust claim in which the plaintiffs "argue[d] vigorously that at the current stage of litigation, i.e., a Rule 12(b)(6) motion, the Court should permit [the] claim to proceed into the discovery stage even if the Court has great doubts about the eventual success of the [p]laintiffs." Id. This Court rejected this argument stating that Dickson "gave definitive guidance concerning the resolution of antitrust claims at the 12(b)(6) stage." Id.

Under the legal standard that this Court must apply, allegations of bare legal conclusions are not sufficient to withstand 12(b)(6) motions in antitrust cases.[3] Avitech's antitrust complaint does not meet the heightened pleading

---

[3] The Court notes that the Ninth Circuit also applies a heightened pleading standard to claims involving the "right to petition governmental bodies under Noerr-Pennington." Oregon Natural Res. Council v. Mohla, 944 F.2d 531, 533 (9th Cir. 1991). Complaints that fail to allege specific activities that bring defendant's conduct into one of the Noerr-Pennington exceptions do not survive 12(b)(6) motions. See Meridian Project Sys. v. Hardin Constr. Co., 404 F. Supp. 2d 1214 (D. Cal. 2005) (applying a heightened pleading standard to a claim that the patent holders infringement suit constituted sham litigation in a post-Swierkiewicz decision.

requirement.[4]  Avitech does not argue that the requirement is met, but asserts that its complaint "is sufficient to apprise Embrex of the nature of its claim . . . [and t]his is all that Avitech is required to allege."  Opp'n 8.  Because more than notice pleading is required the antitrust claim and counterclaim will be dismissed.[5]

B. Declaratory Judgment Claims

Embrex also argues that Avitech's counterclaim for a declaratory action should be dismissed.  Paper No. 33.  "[T]he federal courts almost unanimously have held that when plaintiff's claim is for patent infringement, defendant may counterclaim for a declaration of the invalidity or noninfringement of the patent."  WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1406.  The Supreme Court has reasoned that "a counterclaim questioning the validity or enforceability of a patent raises issues beyond the initial claim for infringement that are not disposed of by a decision of non-infringement."  Fort James Corp.

---

[4] Avitech merely sets forth conclusory allegations in alleging that Embrex's infringement suit was a "sham" lawsuit.  Avitech states: "Embrex's monopolizing conduct was done, and continues to be done without a good faith belief in the validity, infringement or enforceability of the '979 patent."  Compl. ¶ 24.  Avitech has failed to plead any facts to show that Embrex's suit was "objectively baseless" and that "no reasonable litigant could expect success on the merits" and, as such, has failed to adequately plead its anti-trust claim.

[5] Avitech will have 14 days from the date of this Order to move to amend its Complaint to comply with the heightened pleading requirements.

v. Solo Cup Co., 412 F.3d 1340, 1349 (Fed. Cir. 2005) (citing Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83, 96 (1993)).  Avitech counterclaims for a declaration that the '979 patent is invalid and that the machine manufactured by Avitech does not infringe any claim of the '979 patent.  Compl. ¶¶ 14-15.  Thus, Avitech's counterclaim for a declaratory judgement "raise[s] issues beyond the initial claim for infringement."

In a related argument, Embrex contends that Avitech's declaratory judgement action originally filed in this Court should be dismissed.  Paper No. 25.  The parties do not dispute that the declaratory judgment action and the counterclaim for declaratory judgment are identical, but they provide the Court with numerous inapplicable legal arguments involving infringement suits and declaratory action claims filed in different forums.  The parties do not offer an explanation as to what the practical significance might be in keeping or dismissing what is clearly a duplicate claim.  The Court assumes that it is related to Embrex's previous request to realign the parties.  On November 10, 2005, the Court rejected this request stating that, "the primary motivation for realignment appears to be related to the allocation of burdens of proof on different issues and the logical presentation of evidence at trial.  The proper allocation of burdens of proof can certainly be briefed and argued as part of any pretrial proceedings."  Paper No. 23.  This remains true.

As such, the declaratory judgment action will not be dismissed but its identical counterpart, the counterclaim for declaratory judgment, will be dismissed.

## IV. CONCLUSION

For these reasons, Embrex's motions to dismiss will be granted as to all claims except for Avitech's declaratory judgment claim originally filed in this Court.  Avitech remains the plaintiff in that action and Embrex will be a counter-plaintiff in, what is now, its patent infringement counterclaim against Avitech.  A separate order consistent with this Memorandum will follow.

                                                                                                    _____/s/_____
                                                           William M. Nickerson
                                                          Senior United States District Judge

Dated: March 15, 2006