**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | | |
|---|---|---|
| AVITECH, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.  WMN 04-CV-3082 |
| | ) | |
| v. | ) | |
| | ) | |
| EMBREX, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**AVITECH'S OPPOSITION TO EMBREX'S MOTION TO STRIKE
THE DECLARATION OF DR. CHARLES A. GARRIS, JR.**

Plaintiff Avitech, L.L.C. ("Avitech"), by its undersigned counsel, hereby opposes the

motion of Defendant Embrex, Inc. ("Embrex") to Strike the Declaration of Dr. Charles A. Garris,

Jr., who is Avitech's engineering expert, and respectfully shows the Court reasons why the

motion should be denied.

**Introduction**

In support of its motion for summary judgment of patent non-infringement and invalidity,

Avitech offers the Declaration of Charles A. Garris, Ph.D, who is Professor of Mechanical and

Aerospace Engineering at The George Washington University, and a series of documentary and

video exhibits about the parties' technologies prepared by him.  To assist the Court in

understanding the basics of egg injection machines, Dr. Garris' Declaration leads with a

discussion of the technology at the heart of Embrex '979 patent, as reflected in the

commercialized embodiment of the patented invention, Embrex's Inovoject machine.  It would

be surprising indeed if Avitech's technical expert omitted such a discussion and plunged directly

into his non-infringement opinions; it would be like trying to drive a car without a key.  Dr.

Garris then offers opinions about why Avitech's Intelliject® machine does not infringe the '979

patent, which naturally are premised upon his interpretation of the patent claims, which he takes

care to disclose so that the Court will understand his logic and reasoning.  His testimony is

reasonable and appropriate.

Embrex's motion to strike is a "kitchen sink" litany of perceived deficiencies in Dr.

Garris' Declaration that, when subjected to scrutiny, has no basis in law or fact.  For example,

Embrex ignores black letter law of the Federal Circuit holding that a trial court's receipt and

consideration of extrinsic evidence, such as expert opinion of the parties' technologies, is not

only permissible in claim construction but also may be particularly useful and necessary.

Likewise, Embrex mounts a superficial and wholly misguided *Daubert* challenge to Dr. Garris'

qualifications and the reliability of his expert opinions; not one of Embrex's criticisms would be

a proper basis under applicable law for excluding his testimony.  Finally, by turning a blind eye

to what his Declaration actually says, Embrex would have this Court believe that Dr. Garris'

opinions concerning invalidity of the '979 patent are not specific enough to be credible.

I.      **THE FEDERAL CIRCUIT HAS LONG HELD THAT IT IS NOT ONLY
        PERMISSIBLE FOR A TRIAL COURT TO CONSIDER EXTRINSIC
        EVIDENCE WHEN CONSTRUING PATENT CLAIMS BUT ALSO THAT
        SUCH CONSIDERATION MAY BE "USEFUL" AND "APPROPRIATE."**

Arguing that Dr. Garris' Declaration is an "improper attempt to introduce extrinsic

evidence," Embrex makes two basic and unsupportable assertions:

First, Embrex claims that the Declaration is expert testimony that is "inadmissible as a

matter of law in the claim construction process."  (Embrex Mot., p. 1)

   That is clearly incorrect.  As a matter of law, described below, which the Federal Circuit has enunciated on too many occasions for there to be any doubt, a trial court's consideration of extrinsic evidence (such as expert opinion and facts about the accused product) is not only permissible but, when taken in context of the intrinsic evidence as Avitech has suggested it be here, also may be a useful and appropriate means for a court to understand the relevant technology and patent claims.[1]  Indeed, in a separate brief filed simultaneously with its motion to strike, Embrex concedes this.  *See* Embrex SJ Mem. at p. 3 ("extrinsic evidence may be employed to 'shed useful light on the relevant art'").

   Second, Embrex argues that Avitech has "urged" the Court to rely upon Dr. Garris' expert testimony about the '979 patent and the underlying egg injection technology in place of intrinsic evidence of the patent claims.

   This is also patently incorrect.  Dr. Garris leads off his Declaration (¶ 4) with this unambiguous statement:  "The Embrex patent in suit … and the claims thereof, are matters for the Court to interpret as a matter of law.  As such, I will not discuss the patent in any great detail."  Furthermore, Avitech's summary judgment papers make it abundantly clear that his testimony about the meaning of Embrex's patent and the accused product is being offered solely

---

   [1]       "Extrinsic" evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman v. Westview Instruments, Inc.,*  52 F.3d 967, 980 (Fed. Cir. 1995).

as to "assist" the Court in understanding the '979 patent and underlying technology.  *See*

Avitech's opening SJ Mem. at pp. 2-3, where Avitech states:

> *Claim construction is a question of law for the Court to decide based primarily on the intrinsic evidence.*  However, *to assist the Court in its claim construction task*, Avitech's engineering expert, Dr. Charles A. Garris, in his Declaration, provides (1) an analysis of the '979 patent in suit, including drawing sequences expanded from the drawings of the '979 patent, (2) videos, photos, and analyses of the commercial Embrex machine that is covered by the '979 patent, and (3) photographic comparisons that he made of the Embrex machine with Avitech's Intelliject® machine that was photographed by Embrex's technical expert, Dr. Robert Sturges.  *Although these materials and analyses are presented to be helpful to the Court, they are not required to decide the summary judgment motion of noninfringement.*  (emphasis added)

The Court is presumed to understand the law, which allows extrinsic evidence to be

considered in claim construction against the backdrop of intrinsic evidence.  In effect, Embrex's

motion is an off-handed way of saying either that it does not want the Court to have any help in

understanding the relevant technology or that it does not trust the Court to consider Dr. Garris'

testimony in proper context.  Neither would be a proper reason to exclude his testimony.

### A.   Consideration of Expert Testimony is "Useful" in Claim Construction.

"When considered in the context of the intrinsic evidence," extrinsic evidence such as

expert testimony "may be useful in claim construction*."  Biagro Western Sales, Inc. v. Grow*

*More, Inc*., 423 F.3d 1296, 1302 (Fed. Cir. 2006) **,** *citing Phillips v. AWH Corp*., 415 F.3d 1303,

1318-19 (Fed. Cir. 2004).  Expert testimony can aid in claim construction by helping to educate

the trial court about the invention and the knowledge of persons of skill in the relevant field.

*See, e.g., Phillips v. AWH Corp.*, 415 F.3d 1303, 1319 (Fed. Cir. 2004);  *Vitronics Corp. v.*

*Conceptronics, Inc*., 90 F.3d 1576, 1582 (Fed. Cir. 1996); *Markman, supra,* 52 F.3d at 981.

Thus, although the Federal Circuit has "emphasized the importance of intrinsic evidence in claim

construction, [it has] also authorized district courts to rely on extrinsic evidence," such as expert

testimony.  *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1348 (Fed. Cir. 2005),

*citing Phillips, supra*, 415 F.3d at 1317.  As the *Phillips* court observed:

> [T]here is no magic formula or catechism for conducting claim construction. <u>Nor is the court barred from considering any particular sources or required to analyze sources in any specific sequence</u>, as long as those sources are not used to contradict claim meaning that is unambiguous in light of the intrinsic evidence. (*Id*. at 1324, *citing Vitronics, supra*, 90 F.3d at 1583-84) (emphasis added)

Thus, in construing patent claims, "what matters is for the court to attach the appropriate

weight to be assigned to [intrinsic and extrinsic] sources in light of the statutes and policies that

inform patent law." *Phillips, supra*, 415 F.3d at 1324.  Deciding the need for and use of experts

is within the sound discretion of the district court.  *See Key Pharmacy v. Hercon Laboratories*

*Corp*., 161 F.3d 709, 716 (Fed. Cir. 1998) ("trial courts have broad discretion in this regard").

In *Phillips*, the Federal Circuit explained how expert testimony could aid trial courts in

claim construction:

> We have also held that extrinsic evidence in the form of expert testimony can be useful to a court for a variety of purposes, <u>such as to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art</u>, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field. (*Id*. at 1318)  (citations omitted)  (emphasis added). [2]

The *Phillips* court then summarized its views about expert testimony in claim construction

matters, holding:

---

[2]     The Federal Circuit in *Phillips* noted, however, that "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court.  Similarly, a court should discount any expert testimony that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent." (*citing Key Pharmacy v. Hercon Laboratories Corp*., *supra*, 161 F.3d at 716).

In sum, extrinsic evidence may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence.  Nonetheless, because extrinsic evidence can help educate the court regarding the field of the invention and can help the court determine what a person of ordinary skill in the art would understand claim terms to mean, <u>it is permissible for the district court in its sound discretion to admit and use such evidence</u>. In exercising that discretion, and in weighing all the evidence bearing on claim construction, the court should keep in mind the flaws inherent in each type of evidence and assess that evidence accordingly.  (*Id.* at 1319)  (emphasis added)

**B.      Likewise, Consideration of the Accused Product is "Appropriate" in Claim Construction.**

Dr. Garris presents photographic comparisons that he made of the Embrex machine with Avitech's Intelliject® machine that was photographed by Embrex's technical expert, Dr. Robert Sturges, solely to aid the Court in understanding the technology.  This is perfectly proper under *Phillips* and other authorities discussed above.  Moreover, the Court is free to consider these photographs in claim construction.  In *Exigent Tech. v. Atrana Solutions, Inc.,* 442 F.3d 1301, 1309 (Fed. Cir. 2006), the Federal Circuit recently reaffirmed the specific principle that courts may properly consider evidence about the accused product when construing patent claims:

> Exigent also argues that the district court's grant of summary judgment was in error because the court considered the accused product in rendering its claim construction**.**  It is true that "[a] claim is construed in the light of the claim language ... not in light of the accused device." …  However, <u>it is appropriate for a court to consider the accused device when determining what aspect of the claim should be construed</u>.  …  That is all the district court did here, and that was not error.  (citations omitted) [3]

---

[3]      *Citing, e.g., Pall Corp. v. Hemasure Inc.,* 181 F.3d 1305, 1308 (Fed. Cir. 1999) ("Although the construction of the claim is independent of the device charged with infringement, it is convenient for the court to concentrate on those aspects of the claim whose relation to the accused device is in dispute."); *Scripps Clinic & Research Foundation v. Genetech, Inc.*, 927 F.2d 1565, 1580 (Fed. Cir. 1991) ("In 'claim construction' the words of the claims are construed independent of the accused product ... Of course the particular accused product (or process) is kept in mind, for it is efficient to focus on the construction of only the disputed elements or limitations of the claims").

*See Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.,* 442 F.3d 1326-27 (Fed. Cir. 2006)

("While a trial court should certainly not prejudge the ultimate infringement analysis by

construing claims with an aim to include or exclude an accused product or process, knowledge of

that product or process provides meaningful context for the first step of the infringement

analysis, claim construction.")

    **II.    EMBREX'S OBJECTIONS TO DR. GARRIS' TESTIMONY AND
EXHIBITS ARE SPURIOUS AND, IN ANY EVENT, GO ONLY TO
THE WEIGHT TO BE ACCORDED HIS OPINIONS, NOT TO
THEIR ADMISSIBILITY.**

    The touchstone for admission [4] of expert testimony is its reliability, which is a function of

qualifications, methodology and fit.  *See, e.g., Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir.

2003).  Embrex argues that Dr. Garris is unqualified to render his opinions and that certain

portions of his scientific method were flawed as applied.  We demonstrate below that neither

argument has merit.

    **A.    Dr. Garris is Well Qualified by Education, Training, Study,
Experience and Skill to Render Expert Opinions About the Egg
Injection Technology and Patents at Issue.**

    Embrex claims—without more—that  Dr. Garris is "not qualified" to testify competently

about the technology at issue.  *See* Embrex Mot. at 5.  This scarcely needs extended comment,

except to say that Dr. Garris' qualifications are virtually unimpeachable:  he has nearly 40 years

of experience as a teacher, author, researcher, speaker, consultant, practitioner, inventor and

patent agent in the field of mechanical engineering; and he has given testimony as an engineering

expert in more than forty-two patent and other cases, including a recent one involving injection

---

    [4]    The Court's evidentiary rulings in patent cases, including decisions to admit
expert testimony, are discretionary, and are governed by regional circuit law.  *Liquid Dynamics
Corp. v. Vaughan Co.*, 449 F.3d 1209, 1218 (Fed. Cir. 2006).

needles.  *See* ASJ Exh. 4 (Garris resume; case No. 37, referencing his trial testimony for the

patent plaintiff in *Becton Dickinson & Co. v. Tyco Healthcare Group LP*, 2006 U.S. Dist. LEXIS

14999 at * 14 (D. Del. 2006)).  His background and experience when combined with the

extensive research, experiments and measurements of egg injection machines that he performed

in this case, are more than sufficient to qualify him to render expert opinions about the

technology at issue.  *See Thomas J. Kline, Inc. v. Lorillard, Inc*., 878 F.2d 791, 799 (4th Cir.

1989) (test for exclusion of expert witnesses based upon lack of qualification "is a strict one, and

the purported expert must have neither satisfactory knowledge, skill, experience, training nor

education on the issue for which the opinion is proffered"). [5]

> **B.**     **Dr. Garris Does <u>Not</u> Opine That Limitations From the Commercial Embodiment of the '979 Patent Should Be Used To Rewrite the Claims.**

        Embrex's next argument does not go to the reliability of his opinions—and hence is not a

*Daubert*-type challenge at all—but instead is grounded in a misperception about Dr. Garris'

motives in offering observations about the structure and function of the Embrex Inovoject

machine.  That is, Embrex accuses Dr. Garris of suggesting that limitations from the Inovoject

machine, the commercial embodiment of the '979 patent, be read into the claim language.  His

Declaration makes clear, however, that that is not his purpose.  Instead, Dr. Garris takes care to

inform the Court that his views about the Embrex Inovoject machine are offered merely to help

---

[5]        *See, e.g., Eaton Corp. v. Parker-Hannifin Corp*., 292 F. Supp. 2d 555, 567 (D. Del. 2003) (finding mechanical engineer qualified to render expert opinion; "given his familiarity with such couplings both from an academic standpoint and from on-the-job exposure, the court has no basis to doubt the reliability of his testimony"); *Clarke v. LR Systems*, 219 F. Supp. 2d 323, 332 (E.D.N.Y. 2002) (experienced professional and forensic mechanical engineer who had testified in 20 previous case found qualified); *Traharne v. Wayne/Scott Fetzer Co*., 156 F. Supp. 2d 697, 704-06 (N.D. Ill. 2001)  (engineering professor who had written, consulted and testified about relevant scientific issues found qualified).

the Court to understand the technology and patent claims, not to displace the claims themselves

as the primary source of claim construction:

> *I am aware that one infringes on a patent, and not on a commercial*
> *embodiment of that patent*.   However, the commercial embodiment can
> be helpful in understanding the inventive concepts divulged in the patent
> and the structures that are necessary to implement them.  (emphasis added)

Expert testimony concerning the relevant technology is perfectly permissible when

received and used as an aid to a court's understanding of the relevant art, which is precisely the

reason for which Dr. Garris' views are offered.  Embrex admits that testimony offered to assist

the court in understanding technology is a proper purpose, *see* Embrex SJ Mem. at p. 3 and the

case law confirms it.  *See, e.g., Phillips, supra*, 415 F.3d at 1319. [6]

> **C.      Dr. Garris Did Not Make Factual Errors That Embrex Alleges, Let**
> **Alone Any That If True Would Make His Testimony Unreliable.  At**
> **Most, Embrex's Arguments Go to the Weight of His Testimony,**
> **Which Is Not a Proper Basis To Exclude Expert Testimony.**

Pursuant to Federal Rule of Evidence 702, district judges act as gatekeepers to "ensure

that any and all scientific testimony is . . . not only relevant, but reliable."  *Daubert v. Merrell*

*Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).   As long as the principles and methods

used by a technical expert "are reliable and applied reliably to the facts of the case, this type of

testimony is admissible."  *Id.*; *see* In re *Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3d

Cir. 1994) (proponents of expert testimony "do not have to demonstrate to the judge by a

preponderance of evidence that the assessments of their experts are correct, they only have to

---

[6]      Embrex also argues (Mot. at p. 5) that when rendering his non-infringement
opinions, Dr. Garris improperly compares the Embrex Inovoject machine with the accused
product, the Avitech Intellliject® machine.  This is just another way of arguing that the Court may
not consider extrinsic evidence of a commercialized embodiment of the patent-in-suit, which is
not the law.

demonstrate … that their opinions are reliable.  … . The evidentiary requirement of reliability is lower than the merit standard of correctness").

As shown below, Dr. Garris' methods and measurements are error-free.  But even if, *arguendo*, Dr. Garris had made the errors alleged by Embrex, his testimony would still be admissible.  The alleged errors go only to the weight accorded his opinions, not to their admissibility.  As such, Embrex's motion to strike Dr. Garris' Declaration fails by law.

Moreover, the so-called "factual errors" that Embrex argues as a basis for excluding Dr. Garris' Declaration consist of a handful of trumped-up, self-serving contentions that do not implicate any fact material to Avitech's summary judgment motion, let alone constitute a reasonable basis for refusing to consider the Declaration:

1.    <u>Artistic renderings of the Avitech machine</u>.  Dr. Garris prepared a series of CAD (computer aided design) renderings of Avitech Machine Sequence, ASJ Exh. 30 (1)-(12). Embrex argues that Dr. Garris' renderings "make it *appear* as if there is no clearance between the injector and opening in the tooling plate when, in fact, there is."  (Embrex Mot. at 6) [7]  This is grasping at straws.  The renderings are completely accurate and, at the <u>scale</u> at which they are made, the actual clearance is so small—on the order of a couple of human hairs' wide—that it is impossible to visually depict the clearance.  No one has testified differently.  Embrex's argument is like criticizing photos of the earth made by the space shuttle astronauts because they do not show Interstate 95.

Moreover, Dr. Garris' written Declaration contains extensive discussion of the Avitech machine clearance, *see id.,* ¶¶ 17, 20, 23-25, 27, *passim*, such that no reasonable person could

---

[7]    We note that Fig. 3 of the Embrex '979 patent makes it appear that there is no clearance between the sidewall of the injector 23 and the opening in the tooling plate 20 in the "depth of engagement," when in fact there is.  *See* Avitech's opening SJ Br. at pp. 21-23.

fail to appreciate that clearance exists.  Indeed, given that Embrex has now cautioned the Court

to view the renderings in light of the text of Dr. Garris' Declaration, any "error" however

implausible it may be, has been rendered completely harmless.  This is hardly a basis for finding

Dr. Garris' testimony (or any part of it) inadmissible.

        2.    <u>Statements about the Embrex Inovoject machine</u>.  As noted above, Dr. Garris'

statements about the Embrex machine are offered solely to assist the Court in understanding the

technology; Avitech specifically disclaimed reliance upon them for purposes of its summary

judgment motion.  Thus, Embrex's objections are beside the point.

        Moreover, even if Dr. Garris' factual statements about the Embrex machine were

material, Embrex's objections would not be a proper basis to exclude his testimony.  As the

Advisory Committee Notes on the 2000 Amendments to F.R.E. 702 aptly states:

> When facts are in dispute, experts sometimes reach different conclusions
> based upon competing versions of the facts.  The emphasis in the amendment
> on "sufficient facts or data" is not intended to authorize a trial court to exclude
> an expert's testimony on the ground that the court believes one version of the
> facts and not the other.

        3.    <u>High speed video of the Embrex Inovoject machine</u>.   Again, Dr. Garris' video of

the Embrex machine is not offered as evidence in support of summary judgment but merely to

aid the Court in understanding the technology.  But even if it were, Embrex's criticisms of the

video are trivial:  it is not that Dr. Garris failed to calibrate or to record markers on the video at

all, but rather only that his calibration and recording were allegedly not done "properly." [8]

---

[8]    Embrex's criticism of Dr. Garris' measurements (*see* Embrex SJ Exh. K, Sturges
Decl.) is more a tit-for-tat than a credible basis for refusing to consider Dr. Garris' video
exhibits.  When Embrex's expert, Robert Sturges, took a high-speed video of the Avitech
machine in operation at Gold Kist's facility in Alabama in May, 2006, he failed to calibrate or
mark the video at all, and Dr. Garris in his Expert Rebuttal Report dated July 28, 2006, called
him to task for it. (*See id*. at ¶¶ 15-16)  Not to be outdone, Sturges now returns the favor by
purporting to find fault with Dr. Garris' calibration and marking techniques.  *See* note 9 *infra*.

Embrex's criticisms are baseless. [9] More importantly, they are a classic example of argument that goes not to the admissibility of expert testimony but only to the proper weight to be accorded to the evidence.  Use of high-speed video is an accepted measurement technique in the field of engineering for measuring motion,[10] and an opposing expert's nitpicking is not a basis for excluding expert testimony.  *Cf. Amorgianos v. Amtrak*, 303 F.3d 256, 267 (2d Cir. 2002) ("A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion per se inadmissible").

The recent opinion of the Federal Circuit in *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1221 (Fed. Cir. 2006), is instructive of the proper result here.  In *Liquid Dynamics*, the defendant challenged the plaintiff expert's computational fluid dynamics ("CFD") studies to analyze the flow patterns in the accused tanks.  *Id*. at 1220.  Specifically, defendant argued not that CFD studies in general are unreliable, but that the parameters used by the expert in his models did not exactly match the various accused tanks.  *Id*. at 1221.  The court rejected the challenge, finding that the matter went to the weight of the evidence rather than the admissibility of the expert's testimony and analysis.  *Id*.; *see Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd*., 326 F.3d 1333, 1343-46 (11th Cir. 2003) (in *Daubert* challenge to expert's technical

---

[9]    Dr. Garris used the same calibration procedures as Embrex's expert did on his second inspection of the Avitech machine.  Unlike Embrex's witness, Dr. Garris placed markings on the injectors themselves and on the tooling plate, s*ee* Garris Decl., ¶ 13, which is a valid method.

[10]    *See* Expert Rebuttal Report of Charles A. Garris, July 28, 2006, at ¶ 16 ("Motion analysis to determine displacements using video clips and photographs is generally a powerful and common tool of the mechanical engineer").  An authoritative text is M. Sezan & R. Lagendik (eds.), *Motion Analysis and Image Sequence Processing* (Boston:  Kluwer Academic Publishers 1993).

analysis, argument that he used incorrect or incomplete data to run software held to go more to the weight of the evidence than to its admissibility).[11]

### III.   DR. GARRIS' TESTIMONY CONCERNING INVALIDITY ARE SUFFICIENTLY SPECIFIC AND COMPLETE TO BE CREDIBLE.

Embrex's final criticisms of Dr. Garris' Declaration are, again, not *Daubert*-type claims but rather a suggestion that the Court should disregard his testimony concerning invalidity of the '979 patent because it is insufficiently specific or complete to be useful.   How or why that would be grounds to strike his testimony (as opposed to giving it less weight) is a mystery but, regardless, Embrex's criticisms are unfounded.

### A.   Embrex's Criticism of Dr. Garris' Testimony That '979 Patent is Invalid for Anticipation is Misplaced.

Dr. Garris opines that the '979 patent is invalid for anticipation by the prior art Sandhage patent that was disclosed during prosecution.  Embrex complains that his testimony is "conclusory" because he "does not explain where in the Sandhage patent each and every element of the claims of the '979 patent are allegedly shown."  (Embrex Mot. at 7)  At pages 19-20 of his Declaration, however, Dr. Garris provides precisely that information in the form of a detailed, side-by-side comparison of the claims of the '979 patent and of the prior art Sandhage patent. Dr. Garris also specifically states those aspects of Sandhage which, if Embrex's claims construction of the '979 patent were adopted, would render that patent invalid for anticipation.

---

[11]     *See also Stoots v. Werner Co.*, 2005 U.S. Dist. LEXIS 38191 at ** 10-11 (W.D. Va.) ("Where an otherwise qualified expert "review[s] published reports, inspect[s] the product at issue, and perform[s] tests on the product," that expert's opinion will be admitted to help clarify matters outside the realm of everyday experience for the jury") (citation omitted).

**B.**     **Dr. Garris' Testifies in Ample Detail That the '979 Patent is Invalid for Insufficient Disclosure of How One Would Determine the Amount of Clearance Needed to Provide for "Translational Movement."**

As Dr. Garris testifies, and common sense suggests, that clearance is necessary for a rod to move vertically within a circular opening.  Within the constraints of the opening, clearance inherently allows a *de minimis* degree of wiggle room or side-to-side movement.  The Sandhage patent and a host of other prior art employ clearance for vertical movement of injectors and, thus, allow such movement.  Indeed, even the structure of the '979 patent employs clearance for vertical movement.  *See* note 7 *supra*.

Thus, if the Embrex '979 patent is not invalid for anticipation by the Sandhage patent, then the degree of clearance needed to obtain "translational movement" within the meaning of '979 patent (movement beyond that produced by normal clearance) must have been specified.  But it is not.  Dr. Garris' Declaration explains in detail (¶¶ 48-49) the omissions of the '979 patent that support a finding of invalidity.

Embrex criticizes Dr. Garris for failing to provide a factual basis for his opinion that the '979 patent fails to disclose conditions necessary to enable one reasonably skilled in the relevant art to make the invention claimed in the '979 patent.  (Embrex Mot. at 8)  But that is certainly not the case.  His Declaration addresses many of the relevant factors, including "the amount of direction or guidance presented" (none); the nature of the invention (*see id.*, ¶¶ 4-13, *passim*); the state of the prior art (*e.g.*, the Sandhage patent, *see id.*, ¶¶ 42-47); and the breadth of the '979 patent claims (*see id.*, ¶¶ 4-7, 33, 49).

That is more than enough to supply a rational basis for finding invalidity.  *Cf. Amgen, Inc. v. Chugai Pharmaceutical Co., Ltd.*, 927 F.2d 1200, 1213 (Fed. Cir. 1991) (all of the

possibly relevant factors need not be reviewed when determining whether a disclosure is enabling).

**Conclusion**

None of Embrex's objections constitute good cause to exclude Dr. Garris' expert opinions.  Indeed, the motion appears designed simply to preserve a ground for appeal rather than furnish a genuine basis for relief.  Embrex's motion to strike Dr. Garris' Declaration should be denied in its entirety.

Respectfully submitted,

AVITECH, L.L.C.

Max  H. Lauten
Federal Bar No. 00288
KRAMON & GRAHAM, P.A.
One South St.
Suite 2600
Baltimore, MD 21202-3201
Tel.: (410) 752-6030
Fax: (410) 539-1269
Email:  mlauten@kg-law.com


             / s /
By _____
        Philip L. O'Neill
        Bar No. 08303

Harvey B. Jacobson, Jr.
Michael R. Slobasky
JACOBSON HOLMAN PLLC
400 Seventh St., N.W.
Washington, D.C. 20004-2218
Tel.: (202) 626-4681
Fax: (202) 393-5350